**IN THE COURT OF APPEALS OF IOWA**

No. 25-0192
Filed May 7, 2025

**IN THE INTEREST OF J.J.,**
**Minor Child,**

**H.L., Father,**
    Appellant.
_____

Appeal from the Iowa District Court for Polk County, Kimberly Ayotte, Judge.

The father appeals the termination of his parental rights to his child.

**AFFIRMED.**

Britt Gagne of Gagne Law Office, Des Moines, for appellant father.

Brenna Bird, Attorney General, and Mackenzie Moran, Assistant Attorney General, for appellee State.

Sarah E. Dewein of Cunningham & Kelso, P.L.L.C., Urbandale, attorney and guardian ad litem for minor child.

Considered without oral argument by Greer, P.J., and Badding and Chicchelly, JJ.

**CHICCHELLY, Judge.**

A father appeals the termination of his parental rights to his child, J.J., born in 2023.[1]  Upon our de novo review, we affirm termination.

## I.      Background Facts and Proceedings.

The Iowa Department of Health and Human Services (the department) became involved with J.J. in mid-2023 after he tested positive for methamphetamine and THC at birth.  The juvenile court removed J.J. from his parents' custody, but he had only been in the mother's care as the biological father's identity was unknown.  The juvenile court ordered paternity testing of any putative fathers, but the one person tested was excluded.

During the fall of 2023, H.L. became aware that he may be J.J.'s biological father, and in October, he was ordered to submit to paternity testing.  While he initially expressed interest in the department's services, and even participated in two visits with the mother, H.L.'s involvement was short-lived.  He did not participate in any services, failed to appear at two separate court-ordered paternity tests, and by January 2024, he ceased all communication with the department.  Sometime later, the department discovered that H.L. had moved out of state in June 2024.

Proceedings continued without H.L., and the State eventually petitioned for termination of the mother's and any putative fathers' parental rights.  But at a termination hearing in November 2024, despite his lack of engagement in the case

---

[1] While the mother appealed, we do not address her here because we previously affirmed termination of her parental rights in a separate proceeding.  *See In re S.L.*, No. 24-1918, 2025 WL 856089, at *3 (Iowa Ct. App. Mar. 19, 2025).

for nearly a full year, H.L. appeared remotely and requested counsel. The court terminated the parental rights of the mother and other putative fathers, but it granted H.L.'s request for counsel and continued termination of his parental rights to a separate hearing.

Over one year after the court ordered him to submit to paternity testing, H.L. finally complied and appeared for testing, which confirmed that he was J.J.'s biological father. A termination hearing occurred in January 2025, after which the juvenile court terminated the father's parental rights. He appeals.

## II.    Review.

We review termination-of-parental-rights proceedings de novo. *In re W.M.*, 957 N.W.2d 305, 312 (Iowa 2021). While not binding on us, we give weight to the juvenile court's fact findings, "particularly with respect to credibility determinations." *Id.*

## III.    Discussion.

While we generally apply a three-step analysis to review termination proceedings, *see id.* at 313, because the father only challenges the court's best-interest determination, we limit our analysis to that step, *see In re J.E.*, No. 21-1962, 2022 WL 951031, at *2 (Iowa Ct. App. Mar. 30, 2022).

> When we consider whether parental rights should be terminated, we "shall give primary consideration to the child's safety, to the best placement for furthering the long-term nurturing and growth of the child, and to the physical, mental, and emotional condition and needs of the child."

*W.M.*, 957 N.W.2d at 313–14 (citation omitted).

The juvenile court found that termination is in J.J.'s best interests, and we agree. "The 'legislature has established a limited time frame for parents to

demonstrate their ability to be parents.'" *In re A.S.*, 906 N.W.2d 467, 474 (Iowa 2018) (citation omitted). By the time of termination, the father had not seen J.J. in over a year, never participated in any services, moved out-of-state away from his child despite knowing about the child and the pending case, and was unemployed. This does not convince us that the father is able to care and provide for J.J. *See In re A.B.*, 815 N.W.2d 764, 778 (Iowa 2012) (considering a "parent's past performance" to indicate "the quality of the future care that parent is capable of providing" (citation omitted)). While the father testified at the hearing that he would be willing to participate in services, this comes too late. *See In re C.B.*, 611 N.W.2d 489, 495 (Iowa 2000) ("A parent cannot wait until the eve of termination, after the statutory time periods for reunification have expired, to begin to express an interest in parenting."). After spending the majority of his young life in limbo, nearly two years, J.J. deserves permanency. We therefore find that termination is in J.J.'s best interests and we affirm termination of the father's parental rights.

## IV. Disposition.

Because termination is in the best interests of the child, we affirm termination of the father's parental rights.

**AFFIRMED.**